UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| JOSEPH SPEARS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 10-325-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| AMAZON.COM.KYDC LLC, | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER** |
| Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

*** *** *** ***

This matter is before the Court on Defendant's Motion to Dismiss [R. 3], Plaintiff's
Response [R. 6] in opposition to the Motion, and Defendant's Reply [R. 7] to Plaintiff's
Response.  For the reasons set forth below, the Defendant's motion will be granted in part and
denied in part.

**I.**

This case was properly removed [R. 1] from Pulaski Circuit Court under 28 U.S.C. §
1441 as the parties are diverse and the amount in controversy exceeds $75,000.  In his First
Amended Complaint, Joseph Spears ("Spears") states that he was hired as a service technician by
Amazon.Com KYDC ("Amazon") on July 7, 2008.  [R. 1, Attach. 2].  Prior to Spears beginning
work, he received a letter dated June 19, 2008, from Amazon purporting to "clarif[y] and
confirm[]" the terms of Spears' upcoming employment with Amazon. [R. 1, Ex. 1].  The letter
stated, among other things, that a portion of Spears' compensation for his services would

include, "[s]ubject to approval by the Board of Directors, . . . 504 shares of Amazon.com common stock." [*Id.*]  Spears signed the letter on June 27, 2008, accepting the terms of employment as offered by Amazon [R. 1, Attach. 2].

After working at Amazon for roughly five months, Spears received another letter from Amazon dated December 5, 2008, informing Spears that the 504 shares referenced in the June 19th letter were not accurate and would "not be approved by the Board." [R. 1, Ex. 2].  Instead, Amazon stated that it would give Spears 120 shares of common stock.  [*Id.*] The December 5th letter also stated that Amazon, in an effort to apologize for the inconvenience, would provide Spears with a one-time $500 bonus. [*Id.*].  These two letters are the primary focus of the current dispute.

## II.

Amazon argues, pursuant to Federal Rule of Civil Procedure 12(b)(6), that each of the theories for relief contained in Spears' First Amended Complaint fails to state a claim upon which relief may be granted and must be dismissed [R. 3]. The Court agrees in part and disagrees in part.

In reviewing a Rule 12(b)(6) motion, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). Recently, the Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  *See also Courier v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 629 (6th Cir. 2009).  Stated otherwise, it is not enough for a claim to be merely possible; it must also be "plausible."  *See Courier*, 577 F.3d at 630. According to the Court, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556.).

Furthermore, because the Court has jurisdiction in this case under 28 U.S.C. § 1332, the substantive law of Kentucky will be applied.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  Spears sets forth, in his First Amended Complaint and Response, three bases for recovery from Amazon: breach of contract, tort (including fraud and negligence), and statutory relief under KRS § 337.060[1] [R. 1, Attach. 2; R. 6.].  The issue of proper dismissal of each cause of action will be addressed in turn.

## III.

### A.

Spears alleges in his First Amended Complaint that Amazon "breached its employment contract with" Spears [R.1, Attach. 2] when it failed to provide him with 504 shares of Amazon stock as referenced in its June 19th letter to Spears [*Id*., Ex. 1].  It is the Court's responsibility to determine whether an enforceable contract actually exists, and, if it does, what the duties of the parties are under the contract.  *See Biber v. Duplicator Sales & Service, Inc.*, 155 S.W.3d 732, 735 (Ky. App. 2005) ("The construction, meaning, and legal effect of a written contract are

---

[1] The Plaintiff seeks leave to file a second amended complaint to plead its promissory estoppel and negligence claims with more particularity.  The Court finds it unnecessary to grant this motion in order to consider the arguments proffered by both parties in the Response [R. 6] and the Reply [R. 7] about the legitimacy of these theories.

matters of law for the court to decide.").

The June 19th letter signed by both an agent of Amazon and Spears purported to create an at-will employment relationship.  Indeed, the letter is clear that if Spears accepts, then "he will be an employee-at-will, meaning that either [Spears] or [Amazon] may terminate [the] relationship at any time for any reason, with or without cause." [R.1, Ex. 1].  At-will employment relationships are somewhat of an anomaly in the world of contract law.  Whereas most contracts create a mutuality of obligation in all parties to the contract, at-will "contracts" can be terminated by either side. *See Shah v. American Synthetic Rubber Corp.*, 655 S.W.2d 489, 490 (Ky. 1983) (stating that employment-at-will can be terminated by either the employer or the employee).

As such, at-will employment contracts create little or no obligation to perform on either party.  In fact, either party is free to terminate the relationship at any time without fear of breaching a contractual obligation. *See id.*  The ability of parties in an at-will-relationship to change not only the existence of the relationship, but also the conditions of employment is argued by both Spears and Amazon [*See* R. 3, 7-8; R. 6, 10-12].  By engaging in this argument, however, the parties are putting the cart before the horse.  In order for the disputed stock grant to be prospectively changed, implicating the parties' arguments, the grant must first be construed as a condition of employment or employer obligation.

Typically, the only obligations in an at-will relationship[2] arise when an employee provides services for the employer, creating an obligation in the employer to pay the employee the agreed-upon compensation.  In many ways, then, the at-will relationship is somewhat

---

[2]The Court notes that, in this case, Spears was also obligated not to compete against Amazon after leaving employment. [R. 1, Ex. 1].  This obligation is not implicated in the current

analogous to a series of unilateral contracts where the employer's duty to pay compensation is conditioned on the employee showing up to work every day. Every morning the employee shows up to work, a duty arises for the employer to pay him that day's compensation. Spears alleges that the June 19th letter created such a right of compensation to the 504 shares of Amazon stock so long as he continued to show up every day to work [R.1, Attach. 2]. Thus, as Spears' argument goes, the right was a condition of employment that could not be prospectively changed. This argument assumes too much. First, one must determine whether an obligation is present before one considers whether it can be unilaterally and prospectively changed. In this case, the stock grant at issue cannot properly be considered an employer obligation or duty for the reasons set forth below. Therefore, the Court need not address whether it could be prospectively changed.

The June 19th letter states very clearly that in return for Spears' work, Amazon promised to provide Spears with twenty-two dollars ($22) per hour of work. [*Id.*, Ex. 1]. In addition, the letter states that Spears was entitled to other fringe benefits as part of his compensation package including access to a healthcare plan and the ability to enroll in Amazon's 401(k) plan. [*Id.*]. Thus, if Spears performed by working, then Amazon was obligated to provide him with certain benefits and twenty-two dollars for each hour of work.

The grant of 504 shares of common stock is very different. The June 19th letter states that, "[s]ubject to approval by the Board of Directors, [Spears] will be granted a restricted stock unit award with respect to 504 shares of Amazon.com, Inc. common stock." [*Id.*]. This is not the clear language present in other parts of the letter, such as the section stating that Spears' starting salary "will be $22.00 per hour." [*Id.*]. The grant appears to be conditional in that it requires the

case.

5

approval of an apparent third party, the Board.

The identity of the supposed third party whose approval is required to satisfy the condition makes all the difference in this case.  Spears argues that Amazon hindered the satisfaction of the condition and failed to act in good faith because Amazon may have "refus[ed] to present the original offer of 504 shares to [Amazon's] Board of Directors . . . ."[R. 6, 9].  This argument overlooks the fact that Amazon *is* the Board of Directors.  Kentucky fully embraces the "entity theory" of corporations.  *May v. Sullivan*, 188 S.W.2d 469, 470 (Ky. 1945) ("It is well settled in this jurisdiction that a corporation is a legal entity and exists separate and distinct from its stockholders . . . .").  Under the entity theory, a corporation is a separate entity that is free to enter into contracts and assume contract obligations just as an individual would.  *See id*.  When an agent of a corporation, such as an employee or Board member, does so, it is the corporation, not the agent, that is subject to contractual liability. Because the June 19th letter is from an agent of Amazon, the letter, in a very real sense, came from Amazon. At the same time, the letter also purported to condition approval of the stock grant on approval of other agents of Amazon, the Board.  Thus, both the offeror and the authorized approver are really the same entity: Amazon.

With this understanding, it is easy to rewrite the letter to effectively read as a letter from the entity, Amazon, which states, "Subject to my own approval, I will grant you 504 shares of common stock."  This, of course, is no real promise at all.  It is merely an illusory promise.  In Kentucky, an illusory promise is present "when a promisor retains the right to decide whether or not to perform the promised act."  *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315 (6th Cir. 2000) (interpreting Kentucky law).  Because Amazon, a party to the employment contract, sought to condition the stock grant on its own approval, it effectively "retain[ed] the right to decide whether or not to perform the promised act," and the grant is nothing more than

6

an illusory promise.  Illusory promises "fail to create legally binding obligations" and should be read out of contracts.  *See id*.  After reading the conditional grant of stock out of the contract, the parties are left with an at-will employment relationship that obligates Amazon to provide only those previously discussed benefits of an hourly wage and fringe benefits in the event that Spears works, not a stock grant.  Since the stock grant was never legally part of the parties' agreement, it cannot be the basis of a valid contract claim and Spears' contract claim must fail.

For similar reasons, Spears' promissory estoppel claim also fails.  Promissory estoppel, as a doctrine, is recognized in Kentucky.  *McCarthy v. Louisville Cartage Co.*, 796 S.W.2d 10, 11 (Ky. App. 1990) ("[T]he doctrine of promissory estoppel . . . is 'alive and well' in this Commonwealth.").  When one argues that the doctrine is implicated, one is seeking to substitute detrimental reliance for an otherwise required element of a contract claim, consideration.  *Id*. at 12. This does not mean, however, that the other required elements, such as the offer, are no longer needed to make out a valid claim.  *See id*.  Thus, even if Spears could prove that he detrimentally relied on the illusory stock grant in the letter, he still must prove that the offer, or promise, was legally present.

For the same reasons that the conditional stock grant fails under traditional contract theory, it must also fail when relied on in the promissory estoppel context. The stock grant was nothing more than an illusory promise and neither a legal offer nor a promise.  In his Response [R.6, 14], Spears relies on the language in *McCarthy* stating that "[p]romises by employers to provide certain fringe benefits . . . will, at least, give rise to the elements of a promissory estoppel." *McCarthy*, 796 S.W.2d at 12.  This may be true in some circumstances, but one must always find a *promise* first.  In this case, the employer, Amazon, never made a real and definite promise.  Amazon's promise was illusory and it was free to abide by it or not.  As a result, it

7

cannot be the basis of a plausible promissory estoppel claim and Spears' claim fails as a matter of law.

## B.

Spears also alleges causes of action sounding in tort: fraud and negligent misrepresentation [R. 1, Ex. 1; R. 6.].  In his First Amended Complaint, Spears alleges that "[a]s a material inducement . . . , [Amazon] expressly promised and represented to Plaintiff that it would, subject to approval by the Board of Directors, provide [Spears] with 504 shares of [Amazon] stock . . . ." [R. 1, Ex. 1].  Amazon argues that these tort claims should also be dismissed [R. 3] because they are not plausible as required by *Iqbal*. *See supra* Part II.  For the reasons set forth below, the Court disagrees.

In order to prove a fraud in the inducement claim in Kentucky, one must establish six elements by clear and convincing evidence: "a) material representation b) which is false c) known to be false or made recklessly d) made with inducement to be acted upon e) acted in reliance thereon and f) causing injury." *Bear, Inc. v. Smith*, 303 S.W.3d 137, 142 (Ky. App. 2010).  In its Motion, Amazon argues that it could not have made a false representation to Spears because the stock grant was conditioned on Board approval.  [R. 3, 8-9].  The existence of a "condition," however, is a matter properly analyzed under contract theory.  The theory of fraud, on the other hand, is concerned with whether there was a fraudulent "representation."  It is important to note that "[t]he essential element in an action for fraud is not whether the representation is the consideration for contract which a separate action may lie." *H.C. Hanson v. American National Bank & Trust Co.*, 865 S.W.2d 302, 307 (Ky. 1993) (overruled on other grounds). It is important to apply the separate legal doctrines to the facts separately. Whether the representation was conditioned, then, is only relevant when determining how material the

8

representation may have been.

When analyzing the letter, it is certainly plausible that the conditional stock grant could be read as a representation that Spears would likely receive 504 shares of Amazon stock if he came to work at Amazon and met the vesting requirement. Because of the value of the shares and the context in which they were referenced (an employment offer), the representation's high level of materiality is also plausible. The falsity of the representation and the knowledge requirements are measured at the time of the representation. *See Major v. Christian County Livestock Market*, 300 S.W.2d 246, 249 (Ky. 1957). "One may commit 'fraud in the inducement' by making representations as to his future intentions when in fact he knew at the time the representations were made he had no intention of carrying them out." *Id*. (citations omitted). Thus, if Amazon knew that it would not actually consider granting Spears the 504 shares of stock, or if Amazon was reckless when it made this representation, then it is at least plausible that the representation was both false and made with knowledge that it was false.

With respect to the other elements, there appears to be no disagreement among the parties that both the injury and inducement elements meet the *Iqbal* standard. Amazon argues, however, that the reliance element does not meet the plausibility standard. [R. 9, 10]. "In Kentucky, a claimant may establish detrimental reliance in a fraud action when he acts or fails to act due to fraudulent misrepresentations." *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 436 (6th Cir. 2008) (interpreting Kentucky law) (citation omitted).

Amazon argues that Spears could not "make this showing when he continued to work for Amazon for a period of over 1.5 years *after* discovering that Amazon's Board of Directors approved an award of only 120 - not 504 - [shares of common stock]." [R. 9, 10]. Amazon mistakes when the relevant point of measurement occurs. Spears need not prove why he kept

working at Amazon after receiving notice of the approved stock grant in the December 5th letter

[R. 1, Ex. 2].  Spears need only prove that he relied on the representation in the June 19th letter

when he acted by taking the job at Amazon.  *See Christian County Livestock Market*, 300

S.W.2d at 249 ("One may commit 'fraud in the inducement' by making representations as to his

future intentions when in fact he knew at the time the representations were made he had no

intention of carrying them out.").   Because it is plausible that he did so, Amazon's argument for

dismissal based on a lack of detrimental reliance fails.  Furthermore, because the Court finds that

it is plausible that each of the elements for fraud in the inducement may be present, the claim

cannot properly be dismissed.

Spears' claim for negligent misrepresentation survives Amazon's motion for similar

reasons. In Kentucky, negligent misrepresentation occurs when

> [o]ne who, in the course of his business, profession or
> employment, or in any other transaction in which he has a
> pecuniary interest, supplies false information for the guidance of
> others in their business transactions, is subject to liability for
> pecuniary loss caused to them by their justifiable reliance upon the
> information, if he fails to exercise reasonable care or competence
> in obtaining or communicating the information.

*Presnell Const. Managers v. EH Const.*, 134 S.W.3d 575, 581 (Ky. 2004) (citation omitted).

Amazon argues that there is no actionable misrepresentation because the grant was

conditioned [R. 9, 14].  However, it is at least plausible that the granting language in the June

19th letter was "false information" insofar as Amazon knew at that time that it would not

consider granting Spears 504 shares of stock.  Plausibility, of course, is the critical point a

Plaintiff must meet in order to defeat a motion to dismiss. *Supra* Part II.  Amazon also argues

that Spears' reliance on its representations was not justifiable [R. 9, 14] because of the

conditional language in the stock grant and Spears' failure to terminate his employment after learning that Amazon was not going to give him 504 shares of stock [*Id.*].  Once again, the relevant point to measure the reliance is at the time of the representation, the June 19th letter. Whether Spears' reliance on the representation of the stock grant was justified would ultimately be a jury question, but the Court finds that it is at least plausible that he was indeed justified in relying on the grant in the June 19th letter despite its conditional language.  Because Spears claim of negligent misrepresentation, as adequately pled in the First Amended Complaint [R. 1, Attach. 2], is plausible with respect to each element, it survives Amazon's motion to dismiss.

### C.

Spears also asserts a claim under KRS § 337.060 alleging that Amazon "wrongfully denied the Plaintiff wages that are due and owing him in violation of KRS § 337.060(1) . . . ." [R. 1, Attach. 2]. KRS § 337.060(1) states, in relevant part, that "[n]o employer shall withhold from any employee any part of the wage *agreed upon*." KRS § 337.060(1) (emphasis added). For KRS § 337.060(1) to be implicated, it is necessary to first find that the wage allegedly withheld was, at some point, "agreed upon."  *See id*.

Examining the June 19th letter from Amazon, it is plain that Amazon never agreed that it would reward Spears 504 shares of stock.  The key language in the letter is that Spears would only enjoy rights in the stock "[s]ubject to approval by the Board of Directors." [R. 1, Attach. 2]. The statement is illusory.  *See supra* part III.A.  Amazon retained the right to grant or not grant the stock reward. As a result, it could hardly be said that Amazon ever "agreed" to grant Spears the 504 shares of stock.  For this reason, Spears statutory claim under KRS § 337.060(1) is not plausible and the claim is properly dismissed.

## IV.

For the reasons above, it is hereby **ORDERED** as follows:

1. The Defendant's Motion to Dismiss [R. 3] Plaintiff's contract claims, including any claims grounded on promissory estoppel theory, is **GRANTED;**

2. The Defendant's Motion to Dismiss [R. 3] Plaintiff's statutory claim arising under KRS § 337.060 is **GRANTED**.

3. The Defendant's Motion to Dismiss [R. 3] Plaintiff's tort claims, including claims of fraud and negligent misrepresentation, is **DENIED.**

4. Plaintiff's Motion for Leave to File an Amended Complaint [R. 7] to plead with more particularity his negligence and promissory estoppel claims is **DENIED**. The Court finds that these claims were properly pled in the First Amended Complaint [R. 1, Attach. 2], addressed by both parties in the Response [R. 6] and Reply [R. 9], and analyzed in this Opinion.

This the 26th day of September, 2011.



**Signed By:**

**_Gregory F. Van Tatenhove_**

**United States District Judge**